**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| NICHOLE C. K.[1], | Case No. CV 19-08783-AS |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), this matter is remanded for further administrative action consistent with this Opinion.

---

[1]    Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**Proceedings**

On October 12, 2019, Plaintiff filed a Complaint seeking review of the denial of her application for supplemental security income ("SSI") by the Commissioner of Social Security ("Commissioner" or "Agency"). (Dkt. No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 13, 22, 23). On March 30, 2020, Defendant filed an Answer along with the Administrative Record ("AR"). (Dkt. Nos. 20, 21). The parties filed a Joint Stipulation ("Joint Stip.") on September 11, 2020, setting forth their respective positions regarding Plaintiff's claims. (Dkt. No. 32).

The Court has taken this matter under submission without oral argument. See C.D. Cal. C. R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On February 18, 2015, Plaintiff filed an application for SSI, alleging a disability onset date of January 2, 2010. (AR 271). The Commissioner denied Plaintiff's application initially and on reconsideration. (AR 182-191). On May 7, 2018, Plaintiff, represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ") Kyle Andeer. (AR 80-110). The ALJ also heard testimony from Kelly Bartlett, a vocational expert ("VE"). (AR 106-108). On July 30, 2018, the ALJ issued a decision denying Plaintiff's application. (AR 17-32).

1    Applying the five-step sequential process, the ALJ found at
2    step one that Plaintiff has not engaged in substantial gainful
3    activity since February 18, 2015, the application date. (AR 22).
4    At step two, the ALJ found that Plaintiff had the following severe
5    impairments: affective disorder and substance abuse disorder.[2]
6    (Id.). At step three, the ALJ determined that Plaintiff does not
7    have an impairment or combination of impairments that meet or
8    medically equal the severity of any of the listings enumerated in
9    the regulations.[3] (AR 23-24).

10

11   The ALJ then assessed Plaintiff's residual functional capacity
12   ("RFC")[4] and concluded that she has the capacity to perform less
13   than the full range of work at all exertional levels but with the
14   following non-exertional limitations: "no ladders, ropes, or
15   scaffolds; unskilled simple, routine, repetitive tasks; low stress
16   job environment, defined as only occasional decision making or
17   judgment required; only occasional changes in the work setting;
18   only occasional or less interaction with the public; and only
19   occasional interaction with coworkers and supervisors." (AR 25).

20

21   ――――――――――――――
        [2] The ALJ found that Plaintiff's obesity did not
22   significantly limit her ability to perform basic work activities
     and was therefore not a severe medically determinable impairment.
23   (AR 22-23).

24       [3] Specifically, the ALJ considered whether Plaintiff meets
     the criteria of Listing 12.04 (depressive and bipolar related
25   disorders) and 12.06 (anxiety and obsessive-compulsive disorders).
     (AR 23).
26

27       [4] A Residual Functional Capacity ("RFC") is what a claimant
     can still do despite existing exertional and nonexertional
28   limitations. See 20 C.F.R. § 404.1545(a)(1).

3

1   At step four, the ALJ found that Plaintiff does not have any
2   past relevant work. (AR 30). Based on Plaintiff's RFC, age,
3   education, work experience, and the VE's testimony, the ALJ
4   determined at step five that there are jobs that exist in
5   significant numbers in the national economy that Plaintiff can
6   perform, including laundry worker II, night cleaner, and laborer,
7   stores. (AR 30-31). Accordingly, the ALJ found that Plaintiff
8   has not been under a disability, as defined in the Social Security
9   Act, since February 18, 2015, the application date. (AR 31).

11   On June 13, 2019, the Appeals Council denied Plaintiff's
12   request for review. (AR 6-10). Plaintiff now seeks judicial
13   review of the ALJ's decision, which stands as the final decision
14   of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c).

16                         **STANDARD OF REVIEW**

18   This Court reviews the Administration's decision to determine
19   if it is free of legal error and supported by substantial evidence.
20   See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012).
21   "Substantial evidence" is more than a mere scintilla, but less than
22   a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir.
23   2014). To determine whether substantial evidence supports a
24   finding, "a court must consider the record as a whole, weighing
25   both evidence that supports and evidence that detracts from the
26   [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033,
27   1035 (9th Cir. 2001) (internal quotation omitted). As a result,
28   "[i]f the evidence can support either affirming or reversing the

                                     4

1  ALJ's conclusion, [a court] may not substitute [its] judgment for

2  that of the ALJ." <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882

3  (9th Cir. 2006).

4

5                          **DISCUSSION**

6

7      Plaintiff's sole claim is that the ALJ improperly rejected

8  treating physician Dr. Burdick's opinion that Plaintiff was unable

9  to  perform  activities  within  a  schedule,  maintain  regular

10 attendance, and complete a normal workday and workweek without

11 interruptions from psychologically-based symptoms.  (Joint Stip.

12 at 13, 37).  After consideration of the parties' arguments and the

13 record as a whole, the Court finds that Plaintiff's claim warrants

14 a remand for further consideration.

15

16 **A.   <u>Legal Standard for ALJ's Assessment of Medical Opinions</u>**

17

18     An ALJ must take into account all medical opinions of record.

19 20  C.F.R.  §  404.1527(b).[5]  "Generally,  a  treating  physician's

20 opinion carries more weight than an examining physician's, and an

21 examining physician's opinion carries more weight than a reviewing

22 _____

23      [5]    Since Plaintiff filed her application before March 27,
   2017, 20 C.F.R. § 404.1527 applies.  For an application filed on
24 or after March 27, 2017, 20 C.F.R. § 404.1520c would apply.  20
   C.F.R. § 404.1520c changed how the Social Security Administration
25 considers  medical  opinions  and  prior  administrative  medical
   findings, eliminated the use of the term "treating source," and
26 eliminated deference to treating source medical opinions.  <u>See</u> 20
   C.F.R. § 404.1520c(a); <u>Danny L. R. v. Saul</u>, 2020 WL 264583, at *3
27 n.5 (C.D. Cal. Jan. 17, 2020); <u>see also</u> 81 Fed. Reg. 62560, at
   62573-74 (Sept. 9, 2016).
28

physician's." <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001); <u>see also</u> <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1995).   The medical opinion of a treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."   20 C.F.R. § 404.1527(c)(2).   "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency of the record."   <u>Revels v. Berryhill</u>, 874 F.3d 648, 654 (9th Cir. 2017); <u>see also</u> 20 C.F.R. § 404.1527(c)(2)-(6).

If a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ can reject the opinion only for "clear and convincing reasons." <u>Carmickle v. Comm'r, SSA</u>, 533 F.3d 1155, 1164 (9th Cir. 2008); <u>Lester</u>, 81 F.3d at 830.   If the treating or examining doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" that are supported by substantial evidence in the record for rejecting the opinion.   <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007); <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998).   "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017) (citation omitted).

**B.    ALJ's Assessment of Dr. Burdick's Opinion**

      **1.    Dr. Burdick's Opinion**

Dr. Adam Burdick, a psychiatrist at Ventura County Behavioral Health, treated Plaintiff regularly from 2014 to 2018. (See AR 473, 528, 531, 550, 560, 569). On August 13, 2015, Dr. Burdick completed a Short-Form Evaluation for Mental Disorders, where he indicated that Plaintiff had been diagnosed with major depressive disorder, recurrent. (AR 351). As part of this evaluation, he completed a Mental Status Examination of Plaintiff. Upon examination, Dr. Burdick found that Plaintiff was disheveled, appeared guarded, and avoided eye contact, but her motor activity was normal. (Id.). Her concentration was impaired but her memory was normal. (Id.). Dr. Burdick indicated that Plaintiff "has difficulty concentrating due to racing thoughts, depression and anxiety." (AR 352). Dr. Burdick found that Plaintiff was depressed and anxious with a flat affect, and she reported feeling depressed and scared. (Id.). She had severely impaired judgment and passive and fleeting suicidal thoughts, but she denied any plan or intent. (Id.). She had not used drugs or alcohol since 2013. (Id.).

Dr. Burdick opined that Plaintiff's prognosis was guarded and unlikely to improve in 12 months. (AR 353). He indicated that her symptoms included "depressed mood, passive suicidal ideation, feelings of worthlessness, anhedonia, loss of energy, restricting activities and isolation, anxiety, and difficulty concentrating and focusing." (Id.). He reported that since 2008, Plaintiff has

7

1  "demonstrated repeated episodes of decomposition." (Id.).  Dr.

2  Burdick concluded that Plaintiff's mental health symptoms cause

3  "significant impairments in her activities of daily living, social

4  functioning, focus and concentration" and these impairments

5  "continue to have a direct effect on her ability to acquire

6  employment and maintain housing." (Id.).

7

8       Finally, Dr. Burdick completed a medical source statement,

9  where he opined that Plaintiff's ability to perform or sustain the

10  following activities was "poor": understand, remember, and carry

11  out complex instructions; maintain concentration, attention, and

12  persistence; perform activities within a schedule and maintain

13  regular attendance; complete a normal workday and workweek without

14  interruptions from psychologically-based symptoms; and respond

15  appropriately to changes in a work setting. (Id.).  Dr. Burdick

16  further opined that Plaintiff's ability to understand, remember,

17  and carry out simple instructions was "fair." (Id.).

18

19     **2.   ALJ's Findings**

20

21       The ALJ gave partial weight to Dr. Burdick's opinion, finding

22  that "some of the cognitive and adaptive limitations are

23  inconsistent with the objective findings and [Plaintiff's]

24  activities" and that "the evidence of her activities and mental

25  status findings indicate a higher level of functioning" than Dr.

26  Burdick assessed.  (AR 29-30).  Although not specifically

27  identified by the ALJ as a basis for rejecting the opinion, Dr.

28  Burdick's assessments that Plaintiff was limited in performing

8

activities within a schedule, maintaining regular attendance, and completing a normal workday and workweek were contradicted by the opinions of the state agency reviewing physicians and consultative examiner. (See id.). Thus, the ALJ was required to state specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Burdick's opinion. See Trevizo, 871 F.3d at 675.

### a.   Objective Medical Evidence

Plaintiff contends that the ALJ erred by finding that Dr. Burdick's opinion was inconsistent with the objective medical evidence. (Joint Stip. at 13-18). Inconsistency with the objective medical evidence is a specific and legitimate reason for discounting a treating physician's opinion. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ's finding that Dr. Burdick's opinion conflicted with the objective medical evidence is not supported by substantial evidence.

As an initial matter, Plaintiff argues that the ALJ did not sufficiently specify in the opinion what objective medical evidence was inconsistent with Dr. Burdick's opinion. (Joint Stip. at 18). Although it is not entirely clear what objective medical evidence the ALJ found conflicted with Dr. Burdick's opinion, the ALJ discussed medical evidence about Plaintiff's affective disorder elsewhere in his opinion. See Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) (even if an ALJ explains his decision "with less than ideal clarity," a court must uphold it if the ALJ's "path

may be reasonably discerned") (citations omitted). The ALJ acknowledged that Plaintiff complained of various symptoms in her treatment notes, but he found that her "examinations overall include normal and unremarkable mental status findings, except for several occasions where she underwent inpatient psychiatric care." (AR 27). He indicated that she was "regularly observed to present for appointments with good grooming and hygiene, as well as good eye contact"; she was consistently observed as pleasant and cooperative"; her memory was "regularly described as being intact"; and she was "oriented, alert and in no distress." (AR 26-27, 30). He further noted that she communicated concerns with her providers and generally attended appointments as scheduled. (Id.). Finally, he found that Plaintiff reported feeling better with treatment and abstinence from substances, and her symptoms and functioning improved upon being discharged from inpatient care. (Id.). In support of these contentions, the ALJ cited to various treatment notes and mental status examinations from 2011 to 2018. (See id.).

First, the ALJ's characterization of Plaintiff's mental status examinations as "normal" and "unremarkable" is not supported by substantial evidence. As the ALJ recognized, Plaintiff's mental status examinations overall indicated she was well-groomed and dressed, cooperative, alert and oriented, with linear thinking and intact memory and concentration. (See, e.g., AR 528, 535, 550, 560, 569, 580). Indeed, many mental status examinations indicated she had a euthymic mood, an appropriate affect, fair insight and judgment, and no suicidal ideation. (See, e.g., AR 531, 538, 553, 557, 580). But these mental status examinations must be viewed in

the context of Plaintiff's overall medical record, which also contains numerous mental status examinations observing that her mood was depressed, anxious, and irritable (see AR 492, 505, 529, 535, 541, 546, 550, 557, 560, 569, 601); her affect was depressed, blunted, and mildly reactive (see AR 498, 506, 541, 550, 557, 601); her insight and judgment were fair to poor (see AR 529, 531, 535, 538, 541, 546, 550, 553, 557, 560, 589, 601); and she had suicidal ideation (see AR 505, 535).[6]  Plaintiff's treatment notes further reflect that she experienced depressive moods and affect, suicidal ideation, paranoia, and insomnia and poor sleep at various times from 2015 to 2018.  (See AR 531-532, 541, 550, 561, 574, 588, 591).

Thus, even though Plaintiff experienced periods with "normal" mental status examinations, her cumulative medical record reflects positive mental status examinations and findings that support Dr. Burdick's assessed limitations.  See Garrison, 759 F.3d at 1017 (regarding mental health issues, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working"); Holohan, 246 F.3d at 1205 ("[The treating physician's]

---

[6] The ALJ also cited to mental status examinations prior to the relevant period, which appear to reflect that Plaintiff was largely stable and doing well.  (AR 27, 369, 408, 454, 466, 488). These mental status examinations, however, are closely preceded and followed by examinations and treatment notes that observed Plaintiff with a depressed mood, a blunt or bland affect, psychotic symptoms, mood lability, and suicidal ideation.  (See AR 410, 418, 442, 444, 448, 460, 470, 473).

1   statements must be read in context of the overall diagnostic

2   picture he draws. That a person who suffers from severe panic

3   attacks, anxiety, and depression makes some improvement does not

4   mean that the person's impairments no longer seriously affect her

5   ability to function in a workplace.").

6

7        Second, the ALJ's finding that Plaintiff "reported feeling

8   better with treatment" is not supported by substantial evidence.

9   The ALJ referenced Plaintiff's inpatient psychiatric care as an

10  example of how her symptoms resolved with treatment. (AR 26-27).

11  Plaintiff sought inpatient care for suicidal thoughts in 2012 and

12  2013, before the relevant period, after which she reported feeling

13  better. (AR 422, 515-22). But inpatient care did not effectively

14  control her symptoms. She continued to report depressive symptoms,

15  irritability, anxiety, and suicidal ideation from 2012 through

16  2018, even while taking medication. (See, e.g., AR 424, 459, 470,

17  473, 505-06, 528, 531-32, 535, 550, 592). The ALJ also pointed to

18  treatment notes in 2016 and 2017 where Plaintiff reported feeling

19  "fine," "alright," and "not really depressed" as evidence that

20  Plaintiff improved with treatment. (AR 27, 531, 538, 557). But

21  these reports lose significance when viewed in the context of the

22  entire treatment note. For example, Dr. Burdick increased

23  Plaintiff's dose of Celexa for depression despite her reporting

24  that she felt "alright" in May 2017, and at the same time Plaintiff

25  reported feeling "fine" in September 2017, she also reported

26  experiencing suicidal thoughts in the preceding weeks. (AR 531-

27  32, 538-39).

28

1    Rather, Plaintiff's medical record reflects that she was
2    diagnosed with major depressive disorder, recurrent, moderate to
3    severe, which required consistent psychiatric treatment through
4    Plaintiff's date last insured. (See, e.g., AR 530, 536, 547, 561,
5    570, 581, 591, 603). Although Plaintiff experienced some periods
6    of improvement and stability while on medication, Dr. Burdick
7    frequently changed or increased the dose of her depression and
8    anxiety medications, including Wellbutrin, Celexa, Topamax, and
9    Abilify, due to fluctuations in her symptoms and mood throughout
10   the relevant period. (See, e.g., AR 536, 539, 547, 551, 570, 574,
11   581). Therefore, the Court cannot find that Plaintiff's treatment
12   history is substantial evidence that contradicts Dr. Burdick's
13   opined assessments. See Garrison, 759 F.3d at 1017; see also
14   Lambert v. Berryhill, 2017 WL 2294281, at *5-6 (C.D. Cal. May 24,
15   2017) (ALJ erred by "isolating and taking out of context a small
16   quantum of evidence of partial improvement in plaintiff's
17   depression to discredit" the treating physician's opinion).

18

19   Finally, to the extent that the ALJ relied on Plaintiff's
20   ability to communicate complaints to her providers, manage her
21   sobriety, and attend appointments as objective medical evidence
22   that was inconsistent with Dr. Burdick's opinion, these reasons
23   fail. Plaintiff should not be penalized for communicating with
24   providers about her mental health or trying to manage her sobriety,
25   and the ALJ does not explain how doing so had any bearing on her
26   ability to perform activities within a schedule and maintain
27   regular attendance or complete a normal workday and workweek
28   without interruption from psychologically-based symptoms. (See AR

26-27, 30). Moreover, Plaintiff had more difficulty timely attending medical appointments than the ALJ indicated. Plaintiff either did not show up entirely to appointments, showed up late, or called to cancel on the same day as her appointment on several occasions during the relevant period, and she did not see Dr. Burdick for approximately eight months when she left the state seemingly without telling her providers. (AR 529, 544, 560, 563, 565, 567-68, 575). Thus, Plaintiff's attempts to manage her treatment and appointments do not undermine Dr. Burdick's assessments about Plaintiff's limitations.

Accordingly, the ALJ's finding that the objective medical evidence was inconsistent with Dr. Burdick's opinion was not supported by substantial evidence.

**b.   Activities of Daily Living**

Plaintiff further contends that the ALJ erred by finding that Dr. Burdick's assessments were inconsistent with Plaintiff's activities of daily living. (Joint Stip. at 19-24). An inconsistency between a treating physician's opinion and a claimant's daily activities is a specific and legitimate reason to discount the treating physician's opinion. See Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014). Specifically, the ALJ found that Plaintiff's activities of daily living that reflect a "higher level of functioning" than assessed by Dr. Burdick include remaining independent in her care, caring for her young child, managing treatment, managing appointments, complying with program

1    and court requirements, seeking out and obtaining employment,

2    communicating with providers and others, and participating in

3    groups and other programs. (AR 29-30). He also indicated that

4    she was able to manage her sobriety and seek treatment when she

5    did relapse. (AR 30).

6

7        Here, the ALJ erred by failing to explain anywhere in his

8    opinion how the daily activities he identified contradict Dr.

9    Burdick's limitations that Plaintiff cannot perform within a

10   schedule, maintain regular attendance, and complete a normal

11   workday and workweek without interruption. See Popa v. Berryhill,

12   872 F.3d 901, 906 (9th Cir. 2017) (ALJ erred when he failed to

13   explain why the claimant's daily activities were inconsistent with

14   the doctor's opinion). Nevertheless, a review of Plaintiff's

15   activities of daily living and the context in which they were

16   performed demonstrates that the ALJ's finding is not supported by

17   substantial evidence.

18

19       In her Function Report, Plaintiff reported showering and

20   dressing herself and her young son daily, cleaning and doing

21   laundry, going to the store once a week, using public

22   transportation, and managing some of her finances while living in

23   a shelter. (AR 305-07). Plaintiff, however, relied on the shelter

24   for her meals and reminders about chores, and she received

25   childcare help from the shelter and her mother. (AR 93-95, 101,

26   305-06, 538). Plaintiff reported spending most days in her room

27   and having a difficult time getting out of bed when her depression

28   worsens. (AR 99-100, 304). She attended shelter classes and

worked part-time in a shelter thrift shop at certain points during
the relevant period, but she left the shelter where she lived when
she completed the Function Report because she had "difficulty with
the structure of the center and began to feel overwhelmed by the
demands of the program." (AR 305, 503, 538, 550, 553, 558, 577-
78, 611). Although she occasionally sought out employment and
worked full-time, she reported that she was fired from a job after
two weeks because she got into an argument with her boss and she
quit another job after less than two months because "she felt
overwhelmed physically and mentally." (AR 310, 550, 588, 590,
531). Finally, as discussed above, Plaintiff was able to
communicate with providers and generally manage her sobriety, but
she did not always timely attend appointments and required
reminders from the shelter about taking her medications. (AR 306,
529, 544, 563, 565, 567-68, 575, 600).

   The fact that Plaintiff was able to perform some daily
activities is not necessarily inconsistent with her inability to
perform a work schedule and maintain regular attendance or complete
a normal workday and workweek without interruptions. See Vertigan
v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has
repeatedly asserted that the mere fact that a plaintiff has carried
on certain daily activities, such as grocery shopping, driving a
car, or limited walking for exercise, does not in any way detract
from her credibility as to her overall disability. One does not
need to be 'utterly incapacitated' in order to be disabled.")
(quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). This
is particularly the case given that Plaintiff performed many of

16

1  the daily activities identified by the ALJ while living in a shelter
2  that encouraged a routine and outside of the demands of full-time
3  work.   (See AR 310).   When Plaintiff did try to perform daily
4  activities within a regular routine outside of the shelter, such
5  as working full-time, she reported becoming overwhelmed.   See
6  Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical
7  differences between activities of daily living and activities in a
8  full-time job are that a person has more flexibility in scheduling
9  the former than the latter, can get help from other persons . . .
10  , and is not held to a minimum standard of performance, as she
11  would be by an employer.") (cited with approval in Garrison, 759
12  F.3d at 1016).   Therefore, the ALJ's finding that Plaintiff's
13  activities of daily living were inconsistent with Dr. Burdick's
14  opined limitations was not supported by substantial evidence.

15

16  **C.   Remand Is Warranted**

17

18      The decision whether to remand for further proceedings or
19  order an immediate award of benefits is within the district court's
20  discretion.   See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir.
21  2000).   Where no useful purpose would be served by further
22  administrative proceedings, or where the record has been fully
23  developed, it is appropriate to exercise this discretion to direct
24  an immediate award of benefits.   Id. at 1179 ("[T]he decision of
25  whether to remand for further proceedings turns upon the likely
26  utility of such proceedings.").   However, where, as here, the
27  circumstances of the case suggest that further administrative
28  review could remedy the Commissioner's errors, remand is

1  appropriate.  <u>See</u> <u>McLeod v. Astrue</u>, 640 F.3d 881, 888 (9th Cir.
2  2011); <u>Harman</u>, 211 F.3d at 1179-81.

3

4       Since the ALJ failed to properly assess Dr. Burdick's opinion
5  as a treating source, remand is appropriate.  Because outstanding
6  issues must be resolved before a determination of disability can
7  be made, and "when the record as a whole creates serious doubt as
8  to whether the [Plaintiff] is, in fact, disabled within the meaning
9  of the Social Security Act," further administrative proceedings
10 would serve a useful purpose and remedy defects.  <u>Burrell v. Colvin</u>,
11 775 F.3d 1133, 1141 (9th Cir. 2014) (citations omitted).

12

13                              **CONCLUSION**

14

15      For the foregoing reasons, the decision of the Commissioner
16 is reversed, and the matter is remanded for further proceedings
17 pursuant to Sentence 4 of 42 U.S.C. § 405(g).

18

19      LET JUDGMENT BE ENTERED ACCORDINGLY.

20

21 Dated: January 14, 2021

22

23                    _____/s/_____
                              ALKA SAGAR
24            UNITED STATES MAGISTRATE JUDGE

25

26

27

28